IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2005 DEC 8 PM 1: 13

CLERK _____
SO. DIST. OF GA.

WILLIAM M. LEWIS,                )
                                 )
              Petitioner,        )
vs.                              )     CASE NO. 4:05-CV-29
                                 )     [underlying case: 4:03-cr-176]
                                 )
UNITED STATES OF AMERICA,        )
                                 )
              Respondent.        )
_____)

## O R D E R

Before the Court is the Report and Recommendation of the
Magistrate Judge recommending that Petitioner's habeas petition be
dismissed. After careful consideration of Petitioner's objections,
the Court agrees with the Magistrate's recommendation.

### BACKGROUND

On September 11, 2003, the Government filed a superceding
indictment against Petitioner and four codefendants. The
indictment contained eight counts alleging offenses including
conspiracy to manufacture and distribute methamphetamine and
possession of methamphetamine with the intent to distribute.
Petitioner was named in five of the eight counts. On October 31,
2003, he plead guilty to Count Six which charged him with knowingly
and intentionally possessing, with the intent to distribute, a
quantity of methamphetamine on or about May 14, 2003, in violation
of 21 U.S.C. § 841(a)(1). Pursuant to a plea agreement, the
Government dismissed the other four counts against Petitioner.

At the beginning of the plea hearing, the Court advised Petitioner that even though the Government was dismissing the remaining counts, "the charges against you in those counts may still play a part of the calculation of the sentence." (Doc. 177 at 13.)[1] The Court asked Petitioner if he understood that advice to which he replied, "Yes, sir, I do." Id. The Court also stated that the maximum sentence Petitioner could receive was twenty years imprisonment, a fine of not more than $1,000,000.00, or both, at least three years supervised release, and a $100.00 special assessment. Id. The Court explained that the United States Sentencing Guidelines ("the Guidelines") would actually dictate the sentence. Id. at 14. Petitioner indicated that he understood and that he had tried to learn, with the help of his attorney, how the Guidelines would effect his sentence. Id.

Before Petitioner's plea was entered, the Government offered the testimony of an agent in the Savannah Metropolitan Police Department. (Id. at 20-21.) The agent testified that on May 14, 2003, officers observed Petitioner and a codefendant driving on the police department's property. (Id. at 21.) After Petitioner was apprehended, the officers found several bags of methamphetamine that the Petitioner and the codefendant acknowledged to jointly possess. Id. The Court then asked Petitioner if he admitted the

---

[1] Record citations in this Order are to the docket in Petitioner's criminal case, United States of America v. Lewis, et al., 4:03-cr-176 (S.D. Ga. Indictment Filed July 10, 2003).

agent's testimony. (Id. at 22.) Petitioner responded, "Yes, sir, I do." Id. The Court also asked Petitioner to describe in his own words what he did in this case. Id. Petitioner's testimony essentially mirrored the agent's account. He admitted to owning the drugs jointly, and stated, "we were gonna use the drugs to distribute to our friends. And we'd been using the drugs earlier that morning." Id.

At the conclusion of the sentencing hearing, the Court stated that the United States Probation Office would conduct a presentence investigation and file a report that would be made available to Petitioner. (Id. at 23.) The Court advised Petitioner to review the report with his attorney and to call any errors to the attention of the probation officer. Id. The Court stated that it would address any unresolved matters at the sentencing hearing. Id.

The probation officer prepared a presentence report that laid out an extensive account of incidents involving Petitioner and his codefendants. As for the incident charged in Count Six to which Petitioner plead guilty, the presentence report stated that 4 grams of actual methamphetamine were seized. The report also detailed other incidents where Petitioner and his codefendants were involved in the manufacture or possession of methamphetamine between February 10, 2003 and August 14, 2003. Taking into consideration drugs seized in these incidents, the report attributed to

Petitioner a total of 10.6 grams of actual methamphetamine and 117.4 grams of pseudoephedrine. The report also stated that when Petitioner was arrested on August 14, 2003, in addition to methamphetamine and equipment used to manufacture it, officers found a pistol and ammunition. A federal agent determined that the pistol could not function.

The probation officer used the drug equivalency tables contained at U.S.S.G. § 2D1.1 to calculate an equivalency for the methamphetamine and pseudoephedrine attributed to Petitioner. He found 10.6 grams of actual methamphetamine equivalent to 1,174 kilograms of marijuana and 117.4 grams of pseudoephedrine equivalent to 212 kilograms of marijuana. Based on the total of 1,386 kilograms of marijuana, the probation officer recommended a base offense level of 32. He also recommended a two level increase because the pistol was possessed in connection with the offense as well as a three level decrease for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) & (b). This resulted in a total offense level of 31.

As to criminal history, the presentence report assigned a total of five criminal history points for three prior state convictions. Specifically, Petitioner's conviction for simple battery in February of 1994 garnered one point as did his state conviction for driving with a suspended license in September of 1995. His July of 2002 conviction for burglary and theft by taking

garnered three points.  The probation officer determined that these five points resulted in a category three criminal history.  He concluded that based on this category and a total offense level of 31, Petitioner's sentencing range was 135 to 168 months.  A copy of the probation officer's presentece report was provided to Petitioner's counsel prior to sentencing.

At the beginning of the sentencing hearing, the Court asked Petitioner if he had an opportunity to read and review the presentence report with his lawyer.  Petitioner responded, "Yes, sir."  (Doc. 176 at 4.)  The Court asked Petitioner's counsel if he or Petitioner had any objections to the presentence report.  Counsel responded that they did not.  Id.  Accordingly, the Court adopted the conclusions in the report and found that the total offense level was 31 with a criminal history category of 3 leading to a Guidelines range of 135 to 168 months of imprisonment; at least three years of supervised release; a $15,000.00 to $1,000,000.00 fine, $1552.75 in restitution, and a $100.00 special assessment.  Id.  The Court then asked Defendant's counsel if he wished to make any statement in mitigation of the sentence.  Id.  Counsel stated that Petitioner was willing to cooperate with authorities in order to secure a future motion for reduction of sentence due to substantial assistance.  Id.  The Court asked Petitioner if he would like to add anything.  Petitioner responded, "No, sir."  (Id. at 6.)  The Court then sentenced Petitioner to a

term of imprisonment of 135 months with three years supervised release at the end of that term and ordered that Petitioner pay restitution in the amount of $1,552.75 jointly and severally with his codefendants and a special assessment of $100.00. Judgment was entered on February 20, 2004, and Petitioner did not file a direct appeal.

On April 5, 2004, movant filed a pro se motion to withdraw his guilty plea. The Court construed the motion as a motion for habeas relief made pursuant to 28 U.S.C. § 2255 and afforded Petitioner 30 days to supplement or withdraw the motion. Petitioner opted to withdraw the motion. Then, on February 14, 2005, he executed the instant habeas petition raising a number of claims. He claimed that his counsel told him that he would receive a sentence of approximately 60 months imprisonment and failed to assist him in filing objections to the presentence investigation report. He also maintained that his plea was not knowingly, intelligently and voluntarily entered into and that his sentence was improperly enhanced two levels for possession of a firearm.

The Magistrate issued a Report and Recommendation recommending that the petition be dismissed as untimely. The Court did not adopt this recommendation because the Magistrate miscalculated the applicable statute of limitations. The Magistrate then issued another Report and Recommendation addressing each of Petitioner's claims and recommending that they be denied and that this action be

6

dismissed.  After the Court granted his request for an extension of time, Petitioner filed his objections to the recommendation of dismissal on September 13, 2005.

### DISCUSSION

After a de novo review of the record, the Court concurs with the Magistrate's findings.  Petitioner's claim that his counsel was ineffective in telling him that he would receive a shorter sentence and his argument that his plea was not knowingly, intelligently and voluntarily entered into is unavailing for the reasons set forth by the Magistrate.   The Court also agrees that Petitioner is procedurally barred from arguing that his sentence was improperly enhanced for possession of a firearm.  Accordingly, the Court need not engage in any further discussion before finding that these claims are **DISMISSED WITH PREJUDICE**.

However, in his objections, Petitioner raises a number of new claims.  Specifically, he alleges that his counsel was ineffective for not filing an appeal.  He also specifies a number of objections that his counsel failed to raise at sentencing.  Because Petitioner raises these claims for the first time in his objections, the Magistrate did not have an opportunity to address them, and, therefore, the Court must do so in this Order.

I.   The Timeliness of Petitioner's Newly Filed Claims

Before considering the merits of Petitioner's newly filed claims, the Court must determine if they are timely.  Title 28

7

U.S.C. § 2255 contains a one-year statute of limitations. In other words, Petitioner must have filed any § 2255 claims within one-year of the date that his conviction became final. Petitioner's conviction became final on March 5, 2004, and he did not file his recent objections until September 13, 2005. Thus, the Court can only consider claims asserted for the first time in those objections if they "relate back" to the timely filing of his petition.

The Supreme Court recently addressed the relation back of newly asserted claims for habeas relief in Mayle v. Felix, _____ U.S. _____, 125 S. Ct. 2562, 162 L. Ed. 2d 582 (2005). In Mayle, the petitioner filed a timely habeas petition and then amended it after the one-year statute of limitations had passed. The Court determined whether the new claims contained in the amended petition were time barred. This determination turned on the interpretation of Federal Rule of Civil Procedure 15(c)(2)'s requirement that in order to relate back, claims must involve the same "conduct, transaction, or occurrence." Mayle, 125 S. Ct. at 2570. The Court rejected the Ninth Circuit's approach that found a habeas claim to relate back as long as it stemmed from the habeas petitioner's trial, conviction, or sentence. Id. at 2571. Instead, the Court adopted the more narrow stance of the majority of the circuits, including the Eleventh Circuit. Under this approach, claims only relate back when they arise "from the same core facts as the timely

8

filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." <u>Mayle</u>, 125 S. Ct. at 2571-72.

In his timely filed petition, Petitioner claimed that his trial counsel incorrectly advised him as to his potential sentence and failed to properly object at sentencing. He also alleged that he received an improper enhancement for a firearm and that his plea was not entered into knowingly, intelligently, and voluntarily. His recent claim that his counsel failed to file an appeal does not arise from the same core of facts as any of these claims. Petitioner alleges that he attempted to contact his counsel after his sentencing about filing an appeal but his counsel had blocked his calls. This allegation involves discrete events not even alluded to in the timely filed claims. Accordingly, Petitioner's claim that his counsel was ineffective for failing to file an appeal cannot relate back to the filing of the petition. Thus, this claim is untimely and **DISMISSED WITH PREJUDICE.**

In his recent claims, Petitioner also enumerates objections that he maintains his counsel should have made at sentencing. He contends that his counsel should have objected to his base offense level, the enhancement for possession of a dangerous weapon, and the criminal history points based on uncounseled convictions. Petitioner's objections are the first instance wherein he raises these specific claims of ineffective assistance. However, in his

9

original petition, he asserted a general claim that his counsel failed to properly object at sentencing. The recent specific claims and the timely filed general claim clearly arise from the same set of facts, his counsel's decision not to object to the presenentce report at sentencing. Accordingly, the newly filed specific claims relate back to the filing of the habeas petition. Thus, the Court must consider whether Plaintiff's counsel's failure to raise the enumerated objections constitutes ineffective assistance of counsel.

II.  <u>Ineffective Assistance of Counsel at Sentencing</u>

To demonstrate that he received ineffective assistance of counsel at sentencing, Petitioner must show that his counsel's performance was deficient and that he was prejudiced by that deficiency. <u>Hagin v. United States</u>, 267 F.3d 1202, 1204-1205 (11th Cir. 2001). He must overcome a strong presumption of competence, and the Court must defer to counsel's strategy decisions. <u>Id.</u> Petitioner cannot rely on conclusory allegations of ineffective assistance. <u>Wilson v. United States</u>, 962 F.2d 996, 998 (11th Cir. 1992) (citing <u>United States v. Lawson</u>, 947 F.2d 849, 853 (7th Cir. 1991)). Particularly, to establish that his counsel should have raised objections to the presentence report, he must provide a "factual basis upon which counsel could have relied in making such a challenge." <u>Id.</u> Petitioner attempts to make this showing by stating that his counsel should have raised objections in three

10

areas: (1) the base offense level, (2) the two level enhancement based on the firearm, and (3) the consideration of two uncounseled misdemeanor offenses.  The Court will address each of these grounds in turn.

A.   Base Offense Level

The presentence report recommended a base offense level of 32 based on the quantity of drugs attributed to Petitioner. Specifically, the report attributed 10.6 grams of methamphetamine and 117.4 grams of pseudoephedrine to Petitioner and equated those drugs to 1,174 kilograms of marijuana.  Petitioner has not offered any attack that his counsel could have made on the facts behind this attribution.  In other words, he does not contest the amounts seized or the fact that he was involved in particular instances. Rather, he specifies legal objections his counsel should have raised.  He contends that under the Guidelines, a far smaller amount of drugs should have been attributed to him.  Also, he argues that he should not have been held accountable for drugs related to dismissed counts or intended for personal use.  Lastly, he argues that the probation officer erred by converting the drugs to a marijuana equivalent.  The Court will address each of these potential objections below.

1.   Attribution of Drugs Under the Guidelines

At the time of Petitioner's sentence, the Guidelines mandated that the Court consider all "relevant conduct" when determining

11

Petitioner's base offense level.[2]   U.S.S.G. § 1B1.3.   Section 1B1.3(a)(2) lists three requirements for conduct to be considered relevant.   First, the conduct must be of the type that if Petitioner had been convicted of it, the Court would be required to group it with the offense of conviction.   Id.   Second, the conduct must be of the type described in U.S.S.G. § 1B1.3(a)(1)(A) or (B).   Id.   Third, the conduct must be part of the same course of conduct or common scheme or plan as the offense of conviction.   Id.

In this case, the first of these three requirements is clearly met as the Guidelines and Eleventh Circuit case law explicitly provide that drug distribution offenses should be grouped. U.S.S.G. § 3D1.2(d); United States v. Lawrence, 47 F.3d 1559, 1566 (11th Cir. 1995).   For the second requirement to be satisfied, there must be sufficient evidence that Petitioner "committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused" the offense in question, or that the acts or omissions were reasonably foreseeable acts or omissions of others in furtherance of a jointly undertaken criminal activity.   U.S.S.G. § 1B1.3(a)(1).   The presentence investigation report indicated that

---

[2]After the date of Petitioner's conviction, the United States Supreme Court struck down the mandatory nature of the Guidelines.   Booker v. United States, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2004).   Accordingly, the Guidelines are now only advisory.   The Magistrate Judge correctly found that to the extent that Petitioner relies on Booker, the decision provides him no relief because it is not retroactive.   In his objections, Petitioner asserts that he has never and does not now assert any claims based on Booker.   (Doc. 18 at 17.)

the drugs attributed to Petitioner were seized on four occasions between February 11, 2003 and August 14, 2003.  On three of those occasions, drugs were found on Petitioner's person or in a vehicle or house which he occupied.  On the fourth occasion, Petitioner was not present.  However, the man found in possession of the drugs admitted that he, Petitioner, and others were involved in the manufacture of methamphetamine and that the seized drugs were a product of that manufacture.  Thus, there was sufficient evidence that either Petitioner committed, aided, abetted, or willfully caused all four possessions or that they were foreseeable acts of others in furtherance of a jointly undertaken criminal activity.

The presentence report also contained sufficient evidence as to the third and final relevant conduct requirement, that the possessions were part of the same course of conduct or common scheme or plan as the offense of conviction.  Petitioner admitted at his Rule 11 hearing that, on May 14, 2003, he possessed methamphetamine which he intended to distribute.  The presentence report reveals that this was one of many times that he and his codefendants were found to possess methamphetamine and chemicals and equipment used to produce the drug.  In light of this history, it is clear that Plaintiff's offense of conviction and the other three possessions were not isolated incidents but part of a common scheme or plan.  See, Lawrence, 47 F.3d at 1566 ("Thus, the Guidelines require a district court to attribute to a defendant all

13

drugs foreseeably distributed pursuant to a common scheme or plan of which that defendant's conviction was a part."); United States v. Wilson, 884 F.2d 1355, 1357 (11th Cir. 1989) (over 500 grams of cocaine attributable to defendant though only 420 grams seized on date of arrest due to statements of codefendants that shipment on day of arrest was one of many). Accordingly, the possessions of drugs attributed to Petitioner met the Guidelines' definition of relevant conduct. Any objection by Petitioner's counsel to the contrary would have been erroneous and futile.

### 2.   Drugs Related to Dismissed Counts

Petitioner also argues that his counsel should have objected to the attribution of drug quantities related to dismissed counts. Such an objection would have flown in the face of well settled precedent. See, e.g., United States v. Small, No. 04-16640, 2005 WL 2043004, 2 (11th Cir. Aug. 25, 2005) (when sentencing on distribution count, proper to consider drugs related to count of aiding and abetting that was dismissed pursuant to plea agreement since precedent provides that sentencing court can even consider acquitted conduct at sentencing); United States v. Duncan, 400 F.3d 1297, 1304 (11th Cir. 2005); United States v. Rayborn, 957 F.2d 841, 844 (11th Cir. 1992). In fact, as laid out above, the Court advised Petitioner, before accepting his plea of guilty to Count Six, that charges against him in the other dismissed counts may play a part of the calculation of his sentence, and Petitioner

14

indicated that he understood this advice.   (Doc. 177 at 13.)
Petitioner cannot now claim that his counsel was deficient for
failing to object to drugs related to the dismissed counts.

    3.   <u>Drugs Intended For Personal Use</u>

    Petitioner maintains that his counsel should have argued for
the exclusion of drug quantities that he intended to use.
Petitioner's argument again contradicts clear precedent.  In <u>United
States v. Antonietti</u>, 86 F.3d 206, 209 (11th Cir. 1996), the
Eleventh Circuit addressed as a matter of first impression whether
the drug quantity for the base offense level calculation for
distribution offenses includes drugs possessed solely for personal
use.   The court rejected the Ninth's Circuit's approach that
excluded drugs for personal consumption and followed the First,
Seventh, Eighth, and Tenth Circuits by allowing the drugs to be
included in the drug quantity calculation.  <u>Antonietti</u>, 86 F.3d at
209.   Thus, counsel did not err by declining to object to drugs
that Petitioner intended to use rather than distribute.

    4.   <u>Drug Equivalency Tables</u>

    The probation officer used the drug equivalency tables found
at U.S.S.G. § 2D1.1 to calculate a marijuana equivalency for the
amounts of methamphetamine and pseudoephedrine attributed to
Petitioner.  Petitioner contends that the equivalency table was not
applicable, and, therefore, his counsel should have objected to its
use.   Essentially, he maintains that because U.S.S.G. § 2D1.1

provides specific offense levels for amounts of methamphetamine, the marijuana equivalency table was unwarranted.

This argument ignores the fact that Petitioner's offense level calculation also included 117.4 grams of pseudoephedrine.  Section 2D1.1 only provides specific offense levels for "more common controlled substances, i.e., heroin, cocaine, PCP, methamphetamine, fentanyl, LSD and marihuana."  U.S.S.G. § 2D1.1, comment, n. 10. Thus, offense level determinations for less common substances, including pseudoephedrine, require reference to the drug equivalency tables.  Id.  The tables equate quantities of various controlled substances to quantities of marijuana.  Id.  One gram of pseudoephedrine is equated to ten kilograms of marijuana, while one gram of methamphetamine is equated to twenty kilograms of marijuana.  Id.  The drug equivalency tables "also provide a means for combining differing controlled substances to obtain a single offense level."  Id.  In this case, the tables enabled the probation officer to calculate a base offense level for Petitioner's possession of both methamphetamine and pseudoephedrine.  Thus, it was not improper, but rather necessary, for the probation officer to use the drug equivalency tables.

In sum, Petitioner has not provided any availing objection that his counsel could have raised to the probation officer's calculation of a base offense level of 32 based on 1,174 kilograms of marijuana.  Under U.S.S.G. § 1B1.3, 10.6 grams of

methamphetamine and 117.4 grams of pseudoephedrine were properly attributed to Petitioner as relevant conduct. The fact that portions of these drugs were related to dismissed counts or intended for personal use does not change this result. Furthermore, the probation officer did not err by equating the methamphetamine and pseudoephedrine to marijuana. Put succinctly, Petitioner has failed to show that his counsel was deficient by deciding not to object to the base offense level.

B.   Dangerous Weapon Enhancement[3]

Defendant's base offense level was enhanced by two levels due to the possession of a dangerous weapon in connection with the offense pursuant to U.S.S.G. § 2D1.1. The Guidelines direct the Court, "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels." U.S.S.G. § 2D1.1. In this case, the police found a .380 caliber pistol in the house where Petitioner was arrested on August 14, 2003. A federal agent later determined that the pistol could not function. However, the Guideline's definition of dangerous weapon includes "an object that is not an instrument

_____

[3]In his petition, Petitioner claimed that the Court erred when applying the dangerous weapon enhancement. The Magistrate concluded that this claim was procedurally barred because Petitioner failed to object at the sentencing hearing. As set forth above, the Court agrees and adopts this recommendation. In his objections, Petitioner maintains that his counsel was ineffective for failing to object to the dangerous weapon enhancement. Though this claim also involves the dangerous weapon enhancement, it is an entirely different claim that is not procedurally barred. Accordingly, the Court addresses the merits of this claim.

capable of inflicting death or serious bodily injury but closely resembles such an instrument. . . ." U.S.S.G. § 1B1.1, comment, n. 1(D). Even though it was nonfunctional, the pistol found on the date of Petitioner's arrest clearly meets this definition.

Furthermore, the fact that the pistol was found on the date of Petitioner's arrest, and not on the date of the offense of conviction, does not preclude the enhancement. The Eleventh Circuit has held that "a firearm enhancement 'is to be applied whenever a firearm is possessed during conduct relevant to the offense of conviction.'" United States v. Hunter, 172 F.3d 1307, 1309 (11th Cir. 1999) (quoting United States v. Smith, 127 F.3d 1388, 1390 (1997)). In Hunter, the defendant was arrested for selling amphetamine from his vehicle. In a later search of his home, police found drug manufacturing paraphernalia and five firearms. The district court applied the firearm enhancement and the Court of Appeals affirmed. In this case, the pistol was found in a bedroom where methamphetamine was found and in a book bag that also contained equipment for manufacturing methamphetamine. Under Hunter, this is sufficient evidence to find that the weapon was possessed during conduct relevant to the offense.

Put briefly, the pistol warranted a dangerous weapon enhancement even though it was nonfunctional and found during Petitioner's arrest rather than the date of the offense of conviction. Accordingly, Petitioner has failed to show that his

18

counsel was deficient for failing to object to the two level enhancement.

C.  <u>Criminal History Points</u>

In calculating Petitioner's criminal history points under the Guidelines, the probation officer considered three prior convictions. The first conviction, entered in February of 1994, was for simple battery for which Petitioner received one criminal history point. U.S.S.G. § 4A1.1. Petitioner's second conviction, for driving with a suspended license, was entered in September of 1995 and also garnered one criminal history point. <u>Id.</u>  He received three criminal history points for his conviction in July of 2002 for burglary and theft by taking. <u>Id.</u>  The total of five points resulted in a criminal history category of three. U.S.S.G. Chp. 5, pt. A.

Petitioner contends that it was error for the probation officer to consider his convictions for simple battery and driving with a suspended license because he was not represented by an attorney during those convictions. In sentencing a defendant, a district court cannot ignore or discount for any purpose a prior conviction that has not been invalidated in a prior proceeding, unless the prior conviction is "presumptively void." <u>United States</u> <u>v. Jackson</u>, 57 F.3d 1012, 1018-19 (11th Cir. 1995). A defendant may demonstrate that a conviction is presumptively void by showing that he was not afforded his Sixth Amendment right to counsel in

19

the proceedings leading to the conviction. <u>United States v. Phillips</u>, 120 F.3d 227, 231 (11th Cir. 1997). However, no Sixth Amendment violation occurs when a defendant knowingly, intelligently, and voluntarily waives his right to counsel, and, thus, uncounseled convictions after such waivers are not presumptively void. <u>Jackson</u>, 57 F.3d at 1019. In this case, the presentence report showed that Petitioner waived his right to counsel as to both the simple battery and the suspended license convictions. Thus, the burden was on Petitioner to "sufficiently assert facts" that prove that he did not knowingly, intelligently, and voluntarily waive his right to counsel. <u>Id</u>. Petitioner has made no argument as to how his counsel could have carried this burden. In fact, he has not even addressed the fact that he waived his right to counsel. Accordingly, he has failed to show that his counsel was ineffective for failing to object to the consideration of the uncounseled convictions.

Furthermore, the Supreme Court has held that an uncounseled misdemeanor conviction is valid if it did not result in a sentence of imprisonment. <u>Nichols v. United States</u>, 511 U.S. 738, 748-49, 114 S. Ct. 1921, 1928, 128 L. Ed. 2d 745 (1994).[4]  Consequently,

---

[4]In <u>Alabama v. Shelton</u>, 535 U.S. 654, 122 S. Ct. 1764, 152 L. Ed. 2d 888 (2002), the Supreme Court found that the right to counsel attaches when a defendant is given a suspended sentence and placed on probation. However, the only two circuits to address the issue, the Fifth and the Fourth, have held that the holding in <u>Shelton</u> does not apply when a defendant is only given a "stand-alone sentence of probation." <u>United States v. Perea-</u>

such a prior uncounseled conviction may be used to enhance punishment for a subsequent conviction even if that subsequent punishment includes a term of imprisonment. Id. Though Petitioner was sentenced to 10 days confinement for his 1995 driving with a suspended license conviction, he was only sentenced to 12 months probation for his 1994 conviction for simple battery. Therefore, he was only entitled to counsel for the suspended license conviction. In other words, even if Petitioner did not waive representation in the proceedings leading to his conviction for simple battery, the conviction was valid and warranted one criminal history point.

Accordingly, if Petitioner had not waived his right to counsel, any objection that Petitioner's counsel could have raised to the inclusion of the uncounseled convictions could have only resulted in the deduction of the one criminal history point for the suspended license conviction. This would have reduced Petitioner's total criminal history points from five to four. Four criminal history points would still have resulted in a criminal history category of three. U.S.S.G. Chp. 5, Pt. A. In other words, even if Petitioner's counsel could have successfully challenged the inclusion of the suspended license conviction, it would not have

Macias, 335 F.3d 421, 428 (5th Cir.) cert. denied, 540 U.S. 994, 124 S. Ct. 495, 157 L. Ed. 2d 394 (2003); United States v. Pollard, 389 F.3d 101, 105 (4th Cir.) cert. denied, 125 S. Ct. 1618, 161 L. Ed. 2d 291, 73 USLW 3530 (2005) (both citing Nichols).

changed Petitioner's criminal history category.   Furthermore, because Petitioner was sentenced at the bottom end of his guideline range, the challenge could not have impacted his sentence.

Put briefly, Petitioner waived his right to counsel in his previous misdemeanor convictions, and even if he had not, he cannot not show that his counsel's failure to object to the consideration of the convictions prejudiced him.

### CONCLUSION

The Court concurs with the Magistrate Judge's conclusion that Petitioner's original claims raised in his petition for habeas relief should be denied.   The recent claims that he raises in his objections are also fruitless.   His claim that his counsel failed to file an appeal is time barred as it was raised more than a year after his conviction became final and does not relate back to the filing of his petition.   Those claims that do relate back fail on their merits.   Accordingly, Petitioner's petition for habeas relief is **DENIED**, and the Clerk of the Court is **DIRECTED** to **CLOSE** this case.

SO ORDERED this _8th_ day of December, 2005.

WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA